```
                UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF WEST VIRGINIA
                         AT CHARLESTON
```

**UNITED STATES OF AMERICA**

v.                              CRIMINAL ACTION NO. 2:14-00035

**RICKY WALKER**

### MEMORANDUM OPINION AND ORDER

Pending is a motion by the defendant, filed July 30, 2019, to dismiss the indictment for a violation of his Sixth Amendment right to a speedy trial. The government responded in opposition on July 31, 2019, and a hearing was held on August 7, 2019, at which the United States appeared by John J. Frail, Assistant United States Attorney, and the defendant, Ricky Walker, appeared in person and by his counsel, Lorena E. Litten, Assistant Federal Public Defender.

The facts giving rise to this motion are, in all pertinent respects, undisputed. On February 20, 2014, a federal grand jury returned a single-count indictment charging the defendant with knowingly and intentionally distributing quantities of oxycodone and oxymorphone, in violation of 21 U.S.C. § 841(a)(1). ECF # 1. As noted on the record of the hearing, the charges in the indictment resulted from a November

2, 2012 controlled buy wherein the defendant sold illicit drugs to an unbeknownst-to-him undercover police officer; lab tests of the drugs confirmed them to be oxycodone and oxymorphone, both Schedule II controlled substances. The indictment was filed under seal, and a warrant for the defendant's arrest was issued the same day. ECF # 4. Thereafter, law enforcement took the following actions in an effort to locate and apprehend the defendant:

    1. On February 21, 2014, the defendant's name was entered into the National Crime Information Center ("NCIC"), a database shared among federal and state law enforcement agencies. Resp., ECF # 19 at 1.

    2. On February 26, 2014, the United States Department of Justice Drug Enforcement Agency ("DEA") engaged with two potential known residences of the defendant: 1416 Post Oak Lane and 90 Toomer Lane, each in Sanford, North Carolina. Gov. Ex. 1, ECF # 24. The investigating agents did not encounter the defendant, but spoke with his relatives who were at each of the locations. <u>Id.</u> The agents informed the relatives that the defendant was wanted by law enforcement. <u>Id.</u>

A man representing to be the defendant's attorney shortly thereafter contacted the agents by telephone. Id. An agent explained the situation to the attorney, who agreed to attempt to speak with the defendant and convince him to turn himself in. Id. The defendant was not heard from.

3. A more recent address for the defendant was uncovered in June 2014 in Detroit, Michigan, where the United States Marshals Service Detroit Fugitive Apprehension Team attempted to locate him. Resp., ECF # 19 at 2. The defendant was not present at the address, but the investigating agents informed acquaintances of the defendant who were discovered at the residence that the defendant was wanted by law enforcement. Id. The acquaintances informed the agents that the defendant lived elsewhere in Detroit, but did not provide an address. Id. The defendant was not heard from.

4. On two separate occasions, the most recent of which occurred on May 26, 2017, the defendant was featured on a television program called "Detroit's

3

Most Wanted," airing in the greater Detroit area. Id.
Shortly thereafter, an anonymous tip directed law
enforcement to 12510 Kilbourne Street in Detroit,
where the tipster claimed the defendant was staying.
Deputy United States Marshals engaged the residence
and spoke with an individual who lived there, who
advised that the defendant had previously resided
there, but that she did not know his current location.
Id. at 3.

5. On June 19, 2017, the United States Marshals
Service obtained a search warrant to uncover the
dialing, routing, addressing, and signaling
information associated with a Facebook profile
believed to belong to the defendant. Mot. Ex. B.

None of these attempts proved fruitful, and the defendant was finally apprehended on April 24, 2019, in Durham, North Carolina. Since then, the defendant has remained in custody in the Southern District of West Virginia.

On June 7, 2019, the defendant filed a motion, pro se, to have his indictment dismissed for, inter alia, a violation of his Sixth Amendment right to a speedy trial. Upon receiving

4

counsel, the defendant filed the instant motion to dismiss, contending that the five-year delay between his 2014 indictment and 2019 arrest violates his right to a speedy trial.

The court considers four factors when determining whether a speedy trial violation has occurred: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Barker v. Wingo, 407 U.S. 514, 530 (1972).

The first factor, the length of the delay, serves two functions. As described by the Fourth Circuit:

> First, it operates as a preliminary requirement: It is unnecessary to conduct an analysis of a speedy trial claim unless the defendant first demonstrates "that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." Once this hurdle is overcome, the length of delay is relevant to the remainder of the speedy trial analysis because "the presumption that pretrial delay has prejudiced the accused intensifies over time."

United States v. Frith, 181 F.3d 92 (4th Cir. 1999) (internal citations omitted) (quoting Doggett v. United States, 505 U.S. 647 at 651-52). The five-year delay here is sufficient to trigger the Sixth Amendment inquiry. See United States v. Trotman, 406 F. App'x 799, 807 (4th Cir. 2011) ("Courts often have concluded that a delay over one year is 'presumptively

5

prejudicial.'" (citations omitted)). Accordingly, the court considers the remaining <u>Barker</u> factors.

Once the Sixth Amendment inquiry is triggered, the four factors "must be considered together with such other circumstances as may be relevant[;]" no one factor is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." <u>Barker</u>, 407 U.S. at 533. Rather, courts must "engage in a difficult and sensitive balancing process." <u>Id.</u>

Regarding the second factor, the reason for the delay, the Supreme Court notes that "different weights should be assigned to different reasons." <u>Barker</u>, 407 U.S. at 531. In <u>Doggett</u>, the Supreme Court described the range of reasons for a delay as spanning from "reasonable diligence," in which a speedy trial claim would fail generally "as a matter of course however great the delay, so long as [the defendant] could not show specific prejudice to his defense[,]" <u>Doggett</u>, 505 U.S. at 656; to "bad faith in causing delay[, which] will be weighed heavily against the government[,]" <u>id.</u> (citing <u>Barker</u>, 407 U.S. at 531). Between reasonable diligence and bad faith lies negligence, which although "obviously to be weighed more lightly than a

6

deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." Doggett, 505 U.S. at 657.

To demonstrate reasonable diligence, it is sufficient that the government has acted with serious efforts to locate the defendant. See, e.g., United States v. Moreno, 789 F.3d 72, 79–80 (2d Cir. 2015) ("So long as the government made serious investigative efforts calculated to achieve arrest, it acted reasonably for Sixth Amendment purposes." (citing Doggett, 505 U.S. at 652)). Further, if the delay consisted both of periods of reasonable diligence and periods of negligence, "only periods of the delay attributable to negligence should be weighed against the government." Id. at 80, see also Doggett, 505 U.S. at 652-53 (considering only the six-year period of negligent delay, instead of the entire eight and one-half year period of delay, when weighing the second factor: "For six years, the Government's investigators made no serious effort to test their progressively more questionable assumption that Doggett was living abroad, and, had they done so, they could have found him within minutes."), and see id., at 658 ("When the Government's negligence thus causes delay six times as long as that generally

7

sufficient to trigger judicial review, see n. 1, supra, [(stating that one year is generally sufficient),] and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief." (emphasis added) (internal citations and footnotes omitted)).

Here, it is apparent that the government acted with reasonable diligence when it made several attempts to locate the defendant from February to June of 2014, and again in 2017. However, it is less clear whether the government acted reasonably between June 2014 and May 2017. It appears that no additional steps were taken during this time to locate the defendant; at the hearing, the government asserted that it failed to act during those years simply because it had received no new leads as to the defendant's whereabouts and was relying on the NCIC database. The court finds, however, that the government had several known addresses for the defendant and his relatives, and indeed had the contact information for the defendant's supposed attorney, yet did not make any effort to use that information to locate the defendant during that three-year period. Accordingly, the court finds that three years of

the delay is attributable to the government for its negligence. The second factor weighs slightly in the defendant's favor.

As for the third factor, concerning invocation of the right to a speedy trial, this analysis turns largely on whether the defendant knew of his indictment. See Doggett, 505 U.S. at 653 ("The Government goes against the record again in suggesting that Doggett knew of his indictment years before he was arrested. Were this true, Barker's third factor, concerning invocation of the right to a speedy trial, would be weighed heavily against him.") and United States v. Frith, 181 F.3d 92 (4th Cir. 1999) ("a defendant who is unaware that he is under indictment cannot be held to account for failing to assert his right to a speedy trial."). Here, where the government had apprised several of the defendant's relatives and his attorney of his arrest, it would be rational to believe that the defendant knew of his indictment. However, the defendant attests that he was unaware of his indictment, noting that the indictment was sealed. Having no specific evidence showing that the defendant himself was apprised of the indictment, the court cannot find that the defendant knew of the indictment prior to his arrest. Rather, assuming the defendant was unaware thereof until his arrest, the court finds that the defendant timely

9

invoked his right to a speedy trial, having filed a motion asserting his speedy trial rights shortly after his arrest, even prior to obtaining counsel.  Accordingly, this factor weighs in the defendant's favor.

Last, the court considers the prejudice the defendant has suffered due to the delay.  In Doggett, the Supreme Court found that speedy trial claims may succeed even absent demonstrable proof of particularized prejudice, in certain circumstances: "consideration of prejudice is not limited to the specifically demonstrable, and, as [the government] concedes, affirmative proof of particularized prejudice is not essential to every speedy trial claim. . . . [W]e generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify."  Doggett, 505 U.S. at 655–56.  Courts differ on what length of delay is sufficiently lengthy to be deemed "excessive" such that it would trigger presumptive prejudice.  Compare, e.g., United States v. Seltzer, 595 F.3d 1170, 1180 (10th Cir. 2010) ("Generally, the court requires a delay of six years before allowing the delay itself to constitute prejudice."), with United States v. Ferreira, 665 F.3d 701, 709 (6th Cir. 2011) (finding a three-year delay "in

light of the Government's negligence, sufficient to create a presumption of prejudice."). Doggett instructs that the weight given to the presumption of prejudice varies based on the level of fault attributable to the government, and the length of the delay. See Doggett, 505 U.S. at 657 ("And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness[.]"); and see id. ("to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice[.]").

Regardless, a finding of excessive delay and presumptive prejudice is not alone sufficient to grant a speedy trial challenge. See Doggett, 505 U.S. at 655–56 ("While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay."), and Frith, 181 F.3d 92 ("Thus, Doggett did not hold . . . that a sufficiently lengthy delay may be dispositive of a speedy trial claim irrespective of the other criteria for evaluating such a claim."). Rather, Doggett

11

cautioned that the presumption of prejudice can be rebutted: "When the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review, and when the presumption of prejudice, albeit unspecified, is <u>neither</u> <u>extenuated</u>, as by the defendant's acquiescence, <u>nor</u> <u>persuasively</u> <u>rebutted</u>, the defendant is entitled to relief." <u>Id.</u> at 658 (internal citations and footnotes omitted) (emphasis added); <u>see</u> <u>also</u> <u>United States v. Brown</u>, 169 F.3d 344, 351 (6th Cir. 1999) ("If the government can persuasively rebut the presumed prejudice, the defendant is not entitled to relief."), and <u>United States v. Mundt</u>, 29 F.3d 233, 237 (6th Cir. 1994) (finding that "the United States has persuasively rebutted any presumption of prejudice by proving that the delay did not impair defendant's defense."); and <u>cf.</u> <u>United States v. Battis</u>, 589 F.3d 673, 683 (3d Cir. 2009) ("As <u>Doggett</u> recognized, the Government may attempt to rebut this presumption. However, here, as in <u>Doggett,</u> it has not affirmatively proved that the delay left Battis's ability to defend himself unimpaired.").

Here, three years of the delay are attributable to the government for its negligence. The three-year delay is much shorter than the six-year delay in <u>Doggett</u>, and the court finds that the reason for the delay, mere negligence, does not weigh

so heavily against the government that the defendant is entitled to such a strong presumption of prejudice that it cannot be rebutted. Rather, while three years may be sufficient to presume prejudice even absent an affirmative showing thereof, see Ferreira, 665 F.3d 701, the court finds this to be a relatively weak presumption here, based on the length of and reasons for the delay, and further finds that any such presumption has been persuasively rebutted. Specifically, the evidence against the defendant is substantial and unrefuted; the defendant's motion does not assert any particularized prejudice that he has suffered, and, moreover, when given the opportunity, the defendant's counsel was unable to indicate any manner in which the delay has prejudiced the defendant or impaired his defense, as set forth on the record of the hearing. Accordingly, the court finds that the defendant has not been prejudiced by the delay, and this factor weighs in the government's favor.

Thus, when weighing all of the Barker factors and performing the "difficult and sensitive balancing process," Barker, 407 U.S. at 533, focusing especially on the lack of prejudice to the defendant, the court finds that, on balance,

the analysis weighs in the government's favor and the defendant is not entitled to relief.

It is, accordingly, ORDERED that the defendant's motion to dismiss for a violation of his Sixth Amendment right to a speedy trial be, and hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to the defendant, all counsel of record, the United States Probation Department, and the United States Marshal.

DATED: September 4, 2019

John T. Copenhaver, Jr.
Senior United States District Judge